IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID CRAIG, )
 )
   Plaintiff, )
 )
vs. ) No.   CV 97-J-2468-S
 )
CITY OF BIRMINGHAM, et al., )
 )
   Defendants. )

## MEMORANDUM OPINION

This cause comes before the court on Defendants' motion for summary judgment (doc. 12). This court has considered Defendants' motion for summary judgment (doc. 12) along with the briefs and evidentiary materials submitted in support thereof and in opposition thereto.

### Undisputed material facts

The facts made the basis of this lawsuit occurred on September 15, 1995, when the Plaintiff drove a busload of Woodlawn High School students and parents from Birmingham, Alabama, to a football game in Anniston, Alabama. Some of the students on Plaintiff's bus were members of the Woodlawn High School band. Said bus was escorted by a Birmingham police cruiser and two Birmingham police officers, James Jackson ("Jackson") and Rebecca Dill ("Dill"). Upon arriving in Anniston, Plaintiff and the band director got into an argument over some allegedly unruly students which

Plaintiff contends the band director refused to control. This altercation happened in or near Plaintiff's bus. The band director went and got Jackson who attempted to calm the situation down. The altercation continued in Jackson's presence culminating in Plaintiff leaving the scene of the argument.

At or near the time of Plaintiff's departure from the scene, Jackson notified Dill he was in need of assistance. Jackson and Dill went to look for Plaintiff whom they found on the football field. Jackson called out to Plaintiff and indicated that he wanted to speak to Plaintiff further. Plaintiff refused to leave his location on the football field to approach Jackson. According to Jackson, Plaintiff told him that he could come to where Plaintiff was if he wished to speak to Plaintiff. Plaintiff contends he refused to follow Jackson's directives because Jackson was a Birmingham police officer and they were outside of Birmingham. Plaintiff believed that Jackson did not have jurisdiction to require Plaintiff to do anything.

While it is unclear whether or not Jackson approached Plaintiff, the two men were soon in the same proximity. At that point, Jackson reached for Plaintiff's arm, and Plaintiff jerked back. Plaintiff contends that Jackson pushed him against a fence, maced him twice, and forced him to the ground. Plaintiff was then escorted to an Anniston police car; however, Plaintiff was not arrested.

Jackson contends that Plaintiff was a disorderly person and that Jackson was simply trying to effect an arrest. Plaintiff complained to the Birmingham Police

2

Department which conducted an Internal Affairs investigation of Jackson for alleged use of excessive force. Moody Duff of the Internal Affairs Division determined that the results of said investigation did not sustain the charge of excessive force. (Defendants' brief at Ex. 2.)

Plaintiff then brought this against Jackson, the City of Birmingham, Alabama ("the City"), and the Chief of Police, Johnnie Johnson ("Johnson"), in his individual and official capacities. Plaintiff alleges that Jackson's actions violated Plaintiff's rights under the Fourteenth Amendment and that Jackson committed assault and battery upon Plaintiff. Additionally, Plaintiff claims that the City and Johnson negligently failed to train Jackson resulting in violations of 42 U.S.C. §1983 and Alabama tort law. Finally, Plaintiff complains that the City is liable under Ala. Code §11-47-190.

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

3

> burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

## Analysis

### I.   *Claims against the City of Birmingham and Johnnie Johnson*

Plaintiff makes two claims against Johnnie Johnson, individually and in his official capacity as the Chief of Police of Birmingham, Alabama. To the extent that said claims are made against Johnson in his official capacity, they are actually suits against the City and shall be treated as such for purposes of analyzing Defendants' motion for summary judgment.

### A.   *Violations of 42 U.S.C. §1983*

The Supreme Court established the test for attaching municipal liability under 42 U.S.C. §1983 for failure to train police officers in *City of Canton, Ohio v. Harris*, 489

U.S. 378, 209 S. Ct. 1197 (1989). In *Harris,* the City of Canton, Ohio, had empowered certain officers with the power to decide which inmates of the city jail received medical attention. However, the City of Canton did not provide said officers with any training in determining the inmates' medical needs. In that case, the Court held:

> that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact.... Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983....In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. *That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program*.... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.... Moreover, for liability to attach in this circumstance, the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs.

*Id.* at 388-391, 1204-1206 (emphasis added).

In the case at bar, Plaintiff must show that (1) the City had a policy of inadequately training its police officers in the use of force and the procedures for effecting arrests outside Birmingham **and** (2) that the deficiency in training actually caused Jackson's allegedly improper behavior on the night in question. (*See id.*) Plaintiff offers no evidence that the City of Birmingham's training program was inadequate to train Jackson in either the use of force or in effecting arrests outside of the City. Plaintiff's only proffer of such "evidence" is the written counseling and "role training" done by Jackson after this

6

incident. (*See* Deposition of Jackson at 41-42; Defendants' brief at Ex. 2, Att. B.) Plaintiff contends that a reasonable jury could *infer* from this later discipline that the prior training of Jackson was inadequate. (*See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 11.) However, *Harris* discounts this approach. (*See id.* at 391-392, 1206 (stating, in part, "... it [will not] suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct....") Plaintiff is unable to meet the first prong of the *Harris* test. Therefore, Plaintiff fails to establish a *prima facie* case of municipal liability under 42 U.S.C. §1983 for failure to train police officers. Summary judgment is due to be granted in favor of the City and Johnson in his official capacity on said claim.

Plaintiff also contends that Johnson *in his individual capacity* violated 42 U.S.C. §1983. There is no evidence that Johnson personally violated any of Plaintiff's statutory or constitutional rights. Thus, summary judgment is due in favor of Johnson in his individual capacity on Plaintiff's §1983 claim contained in Count II of Plaintiff's First Amended Complaint.

### B.     *Negligent failure to train*

Plaintiff contends that the City and Johnson breached their duty to train Jackson on (1) the use of force and (2) on the proper procedure for effecting an arrest outside Birmingham. The only evidence Plaintiff offers to support said allegations is the "role training" conducted by Jackson after his confrontation with Plaintiff. (*See* Deposition of

Jackson at 41-42.) Said evidence does <u>not</u> indicate that Jackson was the recipient of additional training after the incident as Plaintiff argues in his brief. (Plaintiff's Response to Defendants' Motion for Summary Judgment at 11.) On the contrary, the evidence shows that Jackson <u>conducted</u> training for other officers. Plaintiff's evidence fails to support his averments that the City and Johnson inadequately trained Jackson in (1) the use of force or (2) procedures for effecting an arrest outside Birmingham. (*See id.; see also* Defendants' brief at Ex. 2, Att. B.) Without supporting evidence, Plaintiff does not succeed in making out his *prima facie* case that the City and Johnson breached their duty to train Jackson. Summary judgment is due to be granted for the City and Johnson, individually and in his official capacity, on Count IV of Plaintiff's First Amended Complaint.

### C. *Violations of Ala. Code §11-47-190*

Plaintiff has conceded that summary judgment is due to be granted on Count V of his First Amended Complaint against the City of Birmingham, Alabama, alleging violations of Ala. Code §11-47-190. (*See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 12.) No genuine issues of material fact remain with respect to said count.

### II. *Claims against Officer James Jackson*

Plaintiff's remaining claims are against Officer James Jackson for (1) violations of Plaintiff's Fourteenth Amendment rights and (2) assault and battery. These claims are

contained in Counts I & III of Plaintiff's First Amended Complaint, and genuine issues of material fact remain thereto. Therefore, summary judgment is due to be denied on said claims.

## Conclusion

Based upon the above analysis and in accordance with the separate order this day entered;

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 12) be and hereby is **GRANTED IN PART and DENIED IN PART**;

It is further **ORDERED** that said motion is **GRANTED** with respect to all of Plaintiff's claims against the City of Birmingham and Johnnie Johnson, individually and in his official capacity;

It is further **ORDERED** that said motion is **DENIED** with respect to Plaintiff's claims against Officer James Jackson for violations of Plaintiff's Fourteenth Amendment rights and assault and battery.

**DONE and ORDERED** this the _10_ day of June, 1999.

Inge P. Johnson
United States District Judge